Telia U. Williams, Esq.
LAW OFFICE OF TELIA U. WILLIAMS
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
702-835-6866
telia@telialaw.com
Attorney for Ruby Hunter, *Pro Bono*
<u>In Conjunction with the Legal Aid Center</u>
<u>of Southern Nevada</u>

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RUBY HUNTER, | Case No. 2:18-cv-00252-RFB-CWH |
| Plaintiff, | ~~**PROPOSED ORDER**~~ |
| vs. | **(ECF NO. 4)** |
| NATIONAL RELOCATION VAN LINES; NATIONAL RELOCATION SOLUTIONS; | |
| Defendants. | |

Plaintiff Ruby Hunter has brought contract claims against National Relocation Van Lines and National Relocation Solutions, pursuant to the federal Interstate Commerce Commission Termination Act (formerly known as the Carmack Amendment), 49 U.S.C. § 14706, *et seq.* Before the court are Hunter's combined motions to extend time for service of process, and to serve the defendants by publication (ECF No. 4). For the reasons discussed below, Hunter's motions are granted.

**BACKGROUND**

In 2015, Ruby Hunter contracted with National Relocation Solutions (NRS) to move her belongings, including furniture and household goods, from her hometown in Greenwood,

- 1 -

Indiana to Las Vegas, Nevada. (*See* Compl. (ECF No. 1), at ¶¶ 27-28). NRS sub-contracted with National Relocation Van Lines (NRV). (*Id.* at ¶ 27). After paying $4,375.55 in advance, as agreed upon by the parties, Hunter was just due to pay an additional $1,640.90 upon pick-up. (*See id.* at ¶¶ 29, 33) However, after the deliverymen, agents for NRV, placed Hunter's entire belongings on their truck, they demanded nearly twice as much, or $3,307.50. (*See id.* at ¶¶ 36-38) Seeing that they would neither return her belongings to her, nor take them to the agreed upon location, Hunter paid the sum demanded. (*See id.* at ¶¶ 36-40) Subsequently, the defendants breached the contract by failing to timely deliver her belongings to Las Vegas, and when they finally did, they delivered many of Hunter's most treasured belongings broken. (*See id.* at ¶¶ 53-56) Then, despite her written agreement, the driver of the moving van refused to allow Hunter to recover her belongings without paying an additional $3,500.00, in cash, on the spot. (*See id.* at ¶¶ 46-47) The movers attempted to physically intimidate Hunter, going so far as to follow the elderly woman into her empty apartment, demanding that she make the payment. (*See id.* at ¶¶ 27, 48) Furthermore, the driver failed to give Ruby a lading receipt, or any documentation of the move. (*See id.* at ¶ 51) In total, Hunter made payments to the defendant in the amount of $7,858.75—instead of the $4,375.55 that she contracted for. (*See id.* at ¶¶ 29, 32-33, 52)

After exhausting her administrative remedies by filing a formal claim with the defendants, Hunter timely filed this lawsuit in February 2018, within two years of her receiving an unfavorable response to her claim from the defendants. (*See id.* at ¶¶ 24-26) Hunter was accepted into the *pro bono* program of the Legal Aid Center of Southern Nevada, and assigned to an attorney who filed a lawsuit in this court on her behalf.

To date, however, Hunter has been unable to locate or serve the defendants. Hunter

retained the services of a professional process server, who is also a private investigator, to effectuate service of process on each of the defendants. (*See generally,* ECF No. 4; Exhibit 1, Affidavit of Telia U. Williams, Esq.) However, the server has still neither been able to serve, nor locate the defendants. (*See ids.*) Hunter's counsel's investigation (along with the aid of a paralegal) showed that NRV was last known to have its headquarters at:

> National Relocation Van Lines
> 724 Montana Drive
> Charlotte, North Carolina 28216

(*See* ECF No. 4*,* at 4: 25-26).

NRS was last known to have its headquarters at:

> National Relocation Solutions
> 1585 Sulphur Spring Road
> Arbutus, Maryland 21227

(*See id.*, at 5: 2-4). The applicable corporate licensing agencies in North Carolina and Maryland report that both companies, NRV and NRS, respectively, are not in good standing. (*See id.,* at 5). The Secretary of State of North Carolina reports that NRV was "administratively dissolved" on June 5, 2015. (*See id.*) Similarly, the Maryland Department of Assessments and Taxation reports that NRS's corporate status is currently "forfeited." (*See id.*) Moreover, Hunter confirmed that the Secretary of State of Nevada does not have a registered agent listed for either company, despite the companies having contracted to deliver Hunter's goods to Nevada. (*See id.*, at 5).

Accordingly, on May 11, 2018, Hunter requested the court to grant her an additional 120 days in which to serve the defendants, and to serve them by publication.

**DISCUSSION**

Hunter's motions raise two questions: (1) whether the court may extend the time to serve

the defendants under Federal Rule of Civil Procedure 4(m); and, (2) whether Hunter may serve the defendants by publication under Nevada Rule of Civil Procedure 4(e)(1)(i). Both questions are addressed below.

**A. Hunter's Motion to Extend Time is Granted**

Hunter's motion to extend time to serve the defendants is granted. Courts have broad discretion to extend time for service under Rule 4(m). *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2003). The Supreme Court has stated that the 120-day time period for service contained in Rule 4(m) "operates not as an outer limit subject to reduction, but as an irreducible allowance." *Henderson v. United States*, 517 U.S. 654, 661 (1996). "On its face, Rule 4(m) does not tie the hands of the district court after the 120-day period has expired. Rather, Rule 4(m) explicitly permits a district court to grant an extension of time to serve the complaint after that 120-day period." *Mann v. American Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003). The Advisory Committee Notes to Rule 4(m) state that the rule "explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of Rule of [Rule 4(m)] *even if there is no good cause shown*." *See* Fed. R. Civ. P. 4(m), Advisory Committee Notes, 1993 Amendments (emphasis added).

Generally, "good cause" is equated with diligence. *See* Wright & Miller, Federal Practice and Procedure: Civil 3d § 1337. In the Ninth Circuit, a showing of good cause requires more than simple inadvertence, mistake of counsel, or ignorance of the rules. *See National Union Fire Ins. Co. v. Monroe*, No. 10-cv-0385, 2011 WL 383807, at *1 (D. Nev. Feb. 2, 2011). "At a minimum, good cause means excusable neglect. A plaintiff may also be required to show the following: (a) the party to be served personally received actual notice of the lawsuit; (b) the

defendant would suffer no prejudice; and, (c), the plaintiff would be severely prejudiced if his complaint were dismissed." *See, e.g., Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991). Hunter has satisfied this standard. Since Hunter initiated this action, she has attempted to locate and serve the defendants. She hired a professional process server, who is also a private investigator, who attempted to serve both defendants with information available from public records, including the defendants' own websites and corporate records. She has also searched the secretary of state's public records for multiple states, and employed her attorney, paralegal, and process server to conduct independent research as to the defendants' current location. This constitutes diligence. Further, NRV, and its sub-contractor, NRS, were put on notice of an impending lawsuit with Hunter's filing of an administrative claim that anticipated further litigation, and upon which NRV adversely ruled. (*See* Compl. (ECF No. 1), at ¶¶ 24-26) As a moving company transacting business in multiple states, the defendants would not be prejudiced by additional time to serve, whereas Hunter, an elderly and indigent consumer doing business with the now apparently defunct NRS and NRV, would be. (*See* ECF No. 4, at 4: 25-26; 5: 2-4).

**B. Hunter's Motion to Serve the Defendants by Publication is Granted**

Hunter's motion to serve the defendants by publication is also granted. The Federal Rules of Civil Procedure do not expressly permit service by publication. Rule 4(e)(1), however, permits a plaintiff to serve a defendant "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *See* Fed. R. Civ. P. 4(e)(1).

In Nevada, Rule 4 of the Nevada Rules of Civil Procedure governs service of parties under state law. Parties are required to personally serve summons and the complaint upon

defendants; however, when personal service proves impossible, Rule 4(e)(1)(i) provides that a party may move for service by publication when the opposing party "resides out of the state, or has departed from the state, or cannot, after due diligence be found within the state, or conceals himself to avoid the service of summons." *Id.* A party seeking service by publication must seek leave of court by filing an affidavit demonstrating its due diligence in attempting to personally serve the defendant. *Id.* There are several key factors Nevada courts look to in evaluating a party's due diligence in effecting service. *Id.* Nevada courts take into consideration attempts made by a plaintiff to serve a defendant at his known residence, and other methods of locating a defendant, such as consulting public directories. *See id.,* citing *Price v. Dunn*, 106 Nev. 100, 787 P.2d 785, 786-87 (Nev. 1990), *rev. on other grounds, NC-DSH, Inc. v. Garner,* 125 Nev. 647, 651 n.3, 218 P.3d 853 (Nev. 2009) (and noting that *Price* otherwise remains good law); *Abreu v. Gilmer*, 115 Nev. 308, 985 P.2d 746, 747 (Nev. 1999); *McNair v. Rivera*, 110 Nev. 463, 874 P.2d 1240, 1241 (Nev. 1994).

In *Price,* the Nevada Supreme Court decided that service by publication was not warranted "where other reasonable methods exist for locating the whereabouts of a defendant," and plaintiff could still exercise those methods. *See Price*, 787 P.2d at 786-87. In *Price*, the plaintiff had principally relied upon contacting a defendant's family member, and upon learning that the defendant now lived out of state, moved for service by publication. *See id.* at 785. Although plaintiff's affidavit "technically complie[d] with Rule 4(e)(1)(i)," her actual efforts, as a matter of law, fell short of the due diligence requirement required to allow service by publication, to the extent that the defendant would be deprived of a fundamental right to due process. *See id.* In contrast, in *Abreu*, the Nevada Supreme Court found that the plaintiff exercised due diligence in attempting service. The *Abreu* plaintiff attempted to serve by way of

a process server, and consulted telephone company directories in order to attempt to locate the defendants. *See* 115 Nev. at 311. The *Abreu* court determined that the state's district court had abused its discretion when it held that the plaintiffs had failed to exercise due diligence before seeking to serve the defendant by publication. *See generally, id. Abreu* maintains that "there is no objective, formulaic standard for determining what is, or is not, due diligence." *See id.* at 313. The "due diligence" required before service by publication may be allowed is not quantifiable by reference to the number of service attempts or inquiries into public records. *Id.* "Instead, due diligence is measured by the *qualitative* efforts of a specific plaintiff seeking to locate and serve a specific defendant…'Due diligence must be tailored to fit the circumstances of each case.'" *Id.* (and *quoting, Parker v. Ross*, 117 Utah 417, 217 P.2d 373, 379 (1950)) (Emphasis added).[1]

Here, Hunter has met the threshold requirement by submitting an affidavit. *See* Nev. R. Civ. P. 4(e)(1)(i); ECF No. 4 (Exhibit 1, Affidavit of Telia U. Williams, Esq.) Additionally, Hunter has exceeded the efforts undertaken by the plaintiffs in both *Price* and *Abreu*. Hunter has consulted website directories, and government agency websites in order to try and locate the defendants, and hired a professional to locate and to serve each of the two defendants at their last known corporate addresses, (and the addresses that they provided to Hunter at the time of her transactions with them), to no avail. The published business addresses for NRS and NRV are not viable, more current ones are apparently non-existent, and neither company appears to

---

[1] *Abreu* distinguished the situations where a plaintiff had failed to exercise due diligence before seeking to serve by publication, such as when plaintiff ignored "other reasonable means" of locating the defendant such as the defendant's known employer and insurer, *see Browning v. Dixon*, 114 Nev. 213, 954 P.2d 741 (1998), and, where a plaintiff made no attempt to locate the defendant through her known attorney, *Gassett v. Snappy Car Rental*, 111 Nev. 1416, 906 P.2d 258 (1995), *superseded by rule,* as stated in *In re Estate of Black*, 367 P.3d 416, 418 (Nev. 2016).

have a registered agent in any state to accept service.  Nor do NRS and NRV appear to be in good standing with the Secretary of State of Nevada (nor apparently, in their domicile states). This is sufficient to permit Hunter service of process by publication under Nevada law.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Plaintiff Ruby Hunter's motion to extend time to serve **National Relocation Van Lines** and **National Relocation Solutions** (#4) is GRANTED. Hunter has an additional 120 days from the date of the signing of this order to perfect service.

IT IS FURTHER ORDERED that Plaintiff Ruby Hunter's motion to serve **National Relocation Van Lines** and **National Relocation Solutions** by publication (#4) is also GRANTED.

IT IS SO ORDERED.

DATED July 31, 2018

_____
UNITED STATES MAGISTRATE JUDGE